IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

**AMANDA STEVENS,**
**On Behalf of Herself and**
**all Others Similarly Situated,**
    **Plaintiff,**

v.                                                              Civil Action No. 3:24-cv-00280

**NELNET SERVICING, LLC,**

    **Defendant.**

## FIRST AMENDED CLASS ACTION COMPLAINT

This case involves Defendant's Nelnet Servicing, LLC's ("Nelnet") repeated miscalculation of borrowers' monthly student loan repayment amounts. Nelnet is charged with calculating income-based repayment plans that account for a borrower's income, family size, and amount of discretionary income. Rather than fulfilling its duty to Plaintiff, Nelnet is grossly overcalculating the monthly amount due each month, making it impossible for borrowers to comply with their repayment obligations.[1]

To make matters worse, Nelnet is misrepresenting to consumers and third parties, including credit reporting agencies, that Plaintiff and similarly situated borrowers owe these miscalculated monthly payments. The inflated, false monthly payments due reflect negatively on Plaintiff's and similarly situated consumers' credit profile and deter lenders from considering them for loan opportunities. Nelnet is well aware of its incorrect payment calculations, yet it continues to report the improper amounts to consumers and third parties.

---

[1] Plaintiff files this First Amended Class Action Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).

In addition to these class-wide issues, Plaintiff requested that the credit reporting agencies - Experian, Equifax, and Trans Union – reinvestigate and correct the Nelnet tradeline, but Defendant failed to reasonably investigate Plaintiff's disputes and continued to inaccurately report that Plaintiff owed the incorrect amount on a monthly installment payment. Defendant Nelnet refused to acknowledge that it was calculating an improper amount, even after Plaintiff provided irrefutable proof.

## PARTIES

1.     Plaintiff Amanda Stevens resides in Cabell County, West Virginia. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c) and *West Virginia Code* § 46A-2-122(a).

2.     Defendant Nelnet Servicing, LLC ("Nelnet") is a Nebraska corporation with a principal office location and notice of process address at 121 South 21st Street, Suite 201, Lincoln, NE, 68508. Defendant Nelnet is seeking to collect information from Plaintiff and furnish it to credit reporting agencies regarding the account.

## STATEMENT OF FACTS

3.     Defendant Nelnet is a debt collector allegedly retained to collect student loans of Plaintiff and others similarly situated as defined by *West Virginia Code* § 46A-2-122.

4.     Following the end of the years-long COVID-19 student loan payment forbearance, Nelnet was tasked with recalculating student loan borrowers' monthly payments.

5.     Nelnet calculates repayment plans after student loan borrowers select their loan repayment plans, with options including:

    a. Saving on a Valuable Education (SAVE);

    b. Pay As You Earn (PAYE);

    c. Income-Based Repayment (IBR);

2

    d. Income-Contingent Repayment (ICR);

    e. Standard Repayment;

    f. Graduated Repayment;

    g. Extended Repayment.

6. Income-driven repayment plans – SAVE, PAYE, IBR, and ICR – are designed to help borrowers who cannot afford high monthly payments due to their income and household size.

7. Nelnet informs borrowers that their monthly payments in the SAVE and PAYE plans "will generally be 10 percent of your discretionary income" after reviewing adjusted gross income, family size, and total loan balance. https://nelnet.studentaid.gov/content/idrplans, accessed April 30, 2024.

8. Nelnet cannot claim that the Department of Education directed it to inflate the monthly payment amounts because the Department of Education was withholding funds from servicers who made these exact mistakes.[2]

### Plaintiff Amanda Stevens

9. Plaintiff Amanda Stevens enrolled in the SAVE plan.

10. Plaintiff Stevens owed approximately $35,000.00 in student loans.

11. Plaintiff Stevens has a gross income of $5,833.32 per month.

12. Even at the unadjusted gross income, 10% of her income would be $583.33.

*Facts as to Misrepresentations Made Directly to Consumer Stevens*

13. Nelnet calculated that Plaintiff Stevens owed a monthly payment of over $1,969.44.

---

[2] ABC News available at https://abcnews.go.com/Politics/student-loan-restart-marred-errors-late-notices-incorrect/story?id=104487395, accessed April 30, 2024

3

14. Nelnet mailed Plaintiff a debt collection communication in the form of a monthly statement in December 2023 that showed she was leaving her COVID forbearance and that her upcoming payment in January 2024 would be $1,969.44.

15. This amount would exceed even the highest repayment option of a standard repayment.

16. Nelnet therefore miscalculated the amount due for Plaintiff Stevens under the SAVE plan.

17. This monthly statement sent to Plaintiff Stevens provided Plaintiff with incorrect information about her debt and was a false representation about her debt and the amount of her claim prohibited by the WVCCPA.

18. Nelnet was representing to Plaintiff Stevens that she owed more than double the payment amount that she should have owed under the SAVE program.

19. The Nelnet communication was inaccurate because Plaintiff Stevens did not owe $1,969.44 under ***any*** repayment plan, much less under the SAVE plan.

### False Reporting Facts

20. In January 2024, Plaintiff Stevens was denied a mortgage loan because Nelnet reported to the credit bureaus that she was required to pay $1,969.44 per month to Nelnet and that "this keeps you from qualifying as the debt ratios exceed the 50% DTI limit."

21. Thereafter, Plaintiff Stevens checked her credit and saw that the Nelnet trade line was reporting the inflated monthly amount due.

22. Nelnet was representing that Plaintiff Stevens owed more than double the payment amount that she should have owed under the SAVE program.

23.     The Nelnet representation was inaccurate because Plaintiff Stevens did not owe $1,969.44 under ***any*** repayment plan, much less under the SAVE plan.

24.     Plaintiff checked her account online on February 9, 2024, and was shown:



25.     Plaintiff Stevens disputed the inaccurate Nelnet information through letters sent to Experian, Equifax, and Trans Union in January 2024.

26.     Plaintiff Stevens also called the bureaus to dispute the credit information in January of 2024.

27.     Plaintiff Stevens requested that Defendant Experian, Equifax, and Trans Union investigate and correct her credit report, which was showing the significantly inflated monthly payment on the Nelnet account.

28.     Plaintiff Stevens described how the Nelnet tradeline calculation of her monthly payment was not properly calculated and could not be relied upon by Trans Union, Experian, and Equifax.

29.     Defendants Experian, Equifax, and Trans Union received the disputes and sent them to Nelnet to investigate.

30.     Plaintiff Stevens detailed in her disputes how the payment was improperly calculated by Nelnet.

5

31. Despite her detailed disputes, Nelnet verified to Experian, Equifax, and Trans Union that the monthly payment obligations were properly calculated.

32. Nelnet verified these credit reports even though it had placed Plaintiff Stevens in an administrative forbearance while it worked to recalculate Plaintiff Stevens' correct monthly payment.

33. Defendant Nelnet received a second dispute from Experian, Equifax, and Trans Union regarding Plaintiff's accounts in or around February 2024.

34. In response to these requests, Defendant Nelnet failed to reasonably investigate the disputes, failed to review all relevant information provided by the consumer reporting agency, and failed to modify information that was found to be inaccurate, incomplete, or could not be verified, when it continued to permit the reporting of the delinquencies and improper information on the account.

35. Instead, Defendant Nelnet permitted factually inaccurate payment amount information to be reported on Plaintiff's account.

36. Nelnet's misrepresentation of the amount allegedly owed by Plaintiff Stevens on a monthly ongoing basis harmed Plaintiff Stevens.

37. Nelnet's communications to Experian, Equifax, and Trans Union were false, deceptive, or misleading.

## Damages

38. Defendant Nelnet's misrepresentations on the debt collection letter sent to Plaintiff of the amount owed were coercive, oppressive, and abusive.

39. Plaintiff is not claiming credit reporting damages with respect to her WVCCPA claim.

40. Defendant Nelnet is attempting to collect a debt in an amount that is not actually owed.

41. Defendant Nelnet is misrepresenting the amount owed by Plaintiff Stevens.

42. Defendant has failed and refused to reinvestigate appropriately and to accurately report Plaintiff's monthly payment relating to the Defendant Nelnet.

43. As the result of Defendant's conduct, Plaintiff has suffered loss of credit; loss of the ability to purchase and benefit from credit; increased insurance rates; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

## CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action individually and on behalf of all others similarly situated.

45. The class of consumers represented by Plaintiff in this action are defined as:

> **West Virginia Illegal Debt Collection Class:** All consumers with West Virginia addresses who, within the applicable statute of limitations preceding the filing of this action through the date of class certification, had or have loans serviced by Defendant Nelnet and for whom Nelnet calculated and communicated monthly payments for income-based repayment plans.

46. Defendant Nelnet has corporate policies and procedures regarding collecting debts allegedly owed by West Virginia consumers such as Plaintiff. Defendant Nelnet carries out its policies and procedures through standardized collection activities and software programming.

47. The class can be readily identified by collection activity logs, account records, and computer storage devices or databases maintained by Defendant Nelnet and/or its employees, representatives, or agents.

48. The class is so numerous that joinder of all class members is impracticable. The precise number of class members and their addresses are unknown to Plaintiff; however, they are readily available from Defendant Nelnet's records. Class members may be notified of the

7

pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

49. This action involves questions of law and fact common to the class, which predominate over questions affecting individual class members.

50. Plaintiff's claims are typical of the claims of the class because, among other things, Plaintiff, like the other members of the class, was subjected to misrepresented amounts due and collection measures.

51. Plaintiff has displayed an interest in vindicating the rights of the class members, will fairly and adequately protect and represent the interest of the class, and is represented by skillful and knowledgeable counsel. Plaintiff's interests do not conflict with those of the class and the relief sought by Plaintiff will inure to the benefit of the class generally.

52. The questions of law and fact that are common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy between the class members and Defendant Nelnet.

53. The actions of Defendant Nelnet are generally applicable to the class as a whole and to Plaintiff. For example, the class members can prove the elements of their claims against Defendant Nelnet for violations of the WVCCPA on a class-wide basis using the same evidence that Plaintiff and individual class members would use to prove those claims in individual civil actions.

54. Additionally, the damages or other financial detriment suffered by individual class members is relatively small compared to the burden and expense that would be required to individually litigate each of the class member's claims against Defendant Nelnet and it would be

impracticable for the class members to individually seek redress for the Defendant Nelnet's wrongful conduct.

55. Even if the members of the class could afford individual litigation, given the expected size of the class, separate litigation of each class member's claims against Defendant Nelnet would create the potential for inconsistent and/or contradictory judgments, and cause delay and increase the expenses for the parties and the court in adjudicating the claims against Defendant Nelnet. Conversely, a class action will prevent far fewer management difficulties, provide the benefits of a single adjudication, conserve time, effort and expense, employ comprehensive and cohesive supervision by a single court, and provide a forum for small claimants.

56. The prosecution of separate actions by the individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual class members, which would establish incompatible standards of conduct for Defendant Nelnet. Moreover, the likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

57. Defendant Nelnet has acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief with respect to the members of the class as a whole.

58. Any difficulties in management of this case as a class action are outweighed by the benefits that a class action has to offer with respect to disposing of common issues of law and fact on issues affecting a large number of litigants.

59. The damages in this case are set by statute and generally preclude the necessity of a case-by-case assessment of damages by the court. To the extent case-by-case assessment is necessary, Defendant Nelnet maintains computerized individual account information, and that information can easily be reviewed and assessed electronically. Plaintiff is unaware of any

litigation concerning this controversy already commenced by others who meet the criteria for class membership as described above.

60.     Plaintiff's claims are typical of those of the class as a whole, and Plaintiff is capable of and willing to represent the other members of the class.

## CLAIMS FOR RELIEF

### COUNT I – VIOLATIONS OF THE WVCCPA (Individual and Class)

60.     Plaintiff Amanda Stevens incorporates the preceding paragraphs by reference.

61.     Plaintiff Stevens is a "person" who falls under the protection of Article 2 of the West Virginia Consumer Credit and Protection Act (herein "WVCCPA") and is entitled to the remedies set forth in Article 5 of the WVCCPA.

62.     The Defendant, Nelnet, is a debt collector as defined by West Virginia Code §46A-2-122(d) engaging directly or indirectly in debt collection as defined by West Virginia Code §46A-2-122(c) within the State of West Virginia.

63.     Defendant made misrepresentations in a monthly statement sent to Plaintiff Stevens which provided Plaintiff with incorrect information about her debt and constituted a false representation about her debt and the amount of her claim, which is prohibited by the WVCCPA.

64.     The WVCCPA does not require that an award of civil penalties be conditioned on an award of actual damages. W. Va. Code § 46A-5-101(1), *see also* Syl. P. 2, *Vanderbilt Mortg. & Fin., Inc. v. Cole*, 230 W. Va. 505 (W. Va. 2013).

65.     The Defendant Nelnet has engaged in repeated violations of Article 2 of the West Virginia Consumer Credit and Protection Act, including but not limited to,

    a. using unfair or unconscionable means to collect a debt from Plaintiff in violation of West Virginia Code §46A-2-128;

    b. utilizing fraudulent, deceptive, or misleading representations or means regarding Plaintiff's student loan status in an attempt to collect a debt or obtain information regarding Plaintiff in violation of West Virginia Code §46A-2-127.

    c. making false representations and/or implications of the character, extent, or amount of a claim against a consumer violating West Virginia Code §46A-2-127(d).

66. As a result of the Defendant's actions, Plaintiff Stevens and a class of similarly situated consumers have suffered actual and/or statutory damages.

**WHEREFORE**, The Plaintiff demands from the Defendant:

    a. Actual damages for the violations of the WVCCPA, as authorized by *West Virginia Code* §46A-5-101(1), for all such violations that occurred up to the date and time of the filing of this complaint;

    b. Statutory damages, in the maximum amount authorized by *West Virginia Code* §46A-5-101(1), as adjusted for inflation pursuant to *West Virginia Code* §46A-5-106, for all such violations that occurred up to the date and time of the filing of this complaint;

    c. The Plaintiff's cost of litigation, including attorney fees, court costs and fees, pursuant to *West Virginia Code* §46A-5-104;

    d. The Plaintiff be awarded general damages for the Defendant's negligence as alleged in Count I of the Complaint;

    e. The Plaintiff be granted general damages and punitive damages for the

Defendant's conduct;

f. and, such other relief as the Court shall deem just and proper under the attendant circumstances.

## COUNT II – VIOLATION OF FAIR CREDIT REPORTING ACT (Individual)

67. Plaintiff incorporates the preceding paragraphs by reference.

68. Defendant Nelnet repeatedly violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(A) by failing to fully and properly investigate the Plaintiff's disputes.

69. Defendant Nelnet received notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by Defendant Nelnet to Experian, Equifax, and Trans Union.

70. Defendant Nelnet failed to conduct a reasonable investigation with respect to the disputed information.

71. The disputed information was factually inaccurate.

72. Plaintiff's monthly amount due on her student loan was inaccurate under any and all repayment plans.

73. Nelnet admitted to Plaintiff that it had inaccurately reported the amount due on her loans.

74. Nonetheless, Nelnet verified to the credit reporting agencies that its reporting was accurate when it reported that Plaintiff owed $1,969.44 per month on her accounts.

75. As a result of this conduct, action and inaction of Defendant Nelnet, Plaintiff suffered actual damages including without limitation, loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

76. Defendant Nelnet's conduct, action and inactions were and continue to be willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendant Nelnet has been negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) Actual damages and civil penalties pursuant to 15 U.S.C. §1681n and §1681o;

(b) Reasonable attorney fees and the costs of this action; and

(c) Such other relief as the Court may deem equitable and just.

**COUNT III – VIOLATION OF FAIR CREDIT REPORTING ACT (Individual)**

77. Plaintiff incorporates the preceding paragraphs by reference.

78. On one or more occasions, Defendant Nelnet violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

79. Defendant Nelnet received notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by Defendant Nelnet to Experian.

80. Defendant Nelnet failed to review all relevant information provided by Experian pursuant to section 1681i(a)(2) of this title.

81. As a result of this conduct, action and inaction of Defendant Nelnet, Plaintiff suffered actual damages including without limitation, loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

82. Defendant Nelnet's conduct, action and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

In the alternative, Defendant Nelnet was negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) Actual damages and a civil penalties pursuant to 15 U.S.C. §1681n and §1681o;

(b) Reasonable attorney fees and the costs of this action; and

(c) Such other relief as the Court may deem equitable and just.

### COUNT IV – VIOLATION OF FAIR CREDIT REPORTING ACT (Individual)

83. Plaintiff incorporates the preceding paragraphs by reference.

84. On one or more occasions, by example only and without limitation, Defendant Nelnet violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b)(1)(C) and (D) by publishing representations within Plaintiff's credit file with Experian without also including a notation that this debt was disputed and by failing to correctly report results of an accurate investigation to each other credit reporting agency.

85. As a result of this conduct, action and inaction of Defendant Nelnet, Plaintiff suffered actual damages including without limitation, loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

86. Defendant Nelnet's conduct, action and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendant Nelnet was negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a) Actual damages and civil penalties pursuant to 15 U.S.C. §1681n and §1681o;

(b) Reasonable attorney fees and the costs of this action; and

(c)  Such other relief as the Court may deem equitable and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

**Plaintiff Amanda Stevens,
on behalf of herself and all
others similarly situated,**

**By Counsel,**

/s/Benjamin M. Sheridan
Benjamin Sheridan (W. Va. Bar # 11296)
Jed R. Nolan (W. Va. Bar #10833)
Klein & Sheridan, L.C.
3566 Teays Valley Road
Hurricane, WV 25525
304-562-7111

Jonathan Marshall (WVSB #10580)
Denali Hedrick (WVSB #14066)
Bailey Glasser LLP
209 Capitol Street
Charleston, WV 25301
jmarshall@baileyglasser.com
dhedrick@baileyglasser.com
304-345-6555

Patricia Kipnis (WVSB #12896)
Bailey & Glasser LLP
923 Haddonfield Rd.
Cherry Hill, NJ 08002
pkipnis@baileyglasser.com
215-274-9420

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

**AMANDA STEVENS, on behalf of
herself and all others similarly situated,**

    **PLAINTIFF,**

v.　　　　　　　　　　　　　　　　　　CIVIL ACTION NO. 3:24-cv-00280

**NELNET SERVICING, LLC,**

    **DEFENDANT.**

## CERTIFICATE OF SERVICE

On this day came Benjamin Sheridan, counsel for Plaintiff, and certifies that a copy of Plaintiff's "First Amended Class Action Complaint" was served on the Defendant via the Court's electronic ECF Filing System.

Zachary J. Rosencrance
Bowles Rice, LLP
600 Quarrier Street
Charleston, WV 25301
(304) 347-1100
zrosencrance@bowlesrice.com

                  **/s/ Benjamin M. Sheridan**
                  Benjamin Sheridan (W. Va. Bar # 1129
                  Jed R. Nolan (W. Va. Bar #10833)
                  Klein & Sheridan, L.C.
                  3566 Teays Valley Road
                  Hurricane, WV 25525
                  304-562-7111