IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

AMANDA STEVENS,
on behalf of herself and all
others similarly situated,

                Plaintiff,

v.                                                    CIVIL ACTION NO. 3:24-0280

NELNET SERVICING, LLC,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Nelnet Servicing, LLC's Motion for Partial Dismissal of Plaintiff Amanda Stevens' First Amended Class Action Complaint. ECF No. 24. Plaintiff opposes the motion. For the following reasons, the Court **GRANTS** the motion and dismisses Count I without prejudice.

**I.
FACTUAL ALLEGATIONS**

In her First Amended Class Action Complaint, Plaintiff alleges Defendant Nelnet Servicing, LLC ("Nelnet") is a company retained to collect student loan debts. *First Am. Class Action Compl.* ¶3. There are a variety of repayment plans available to borrowers, and Nelnet is responsible for calculating borrowers' monthly payments under those plans. *Id*. ¶5. Some of those plans are "[i]ncome-driven repayment plans" that "are designed to help borrowers who cannot afford high monthly payments due to their income and household size." *Id*. ¶6. Under two of the plans, the Saving on a Valuable Education (SAVE) and Pay As You Earn (PAYE) plans, Nelnet advises borrowers that their monthly payments "'will generally be 10 percent of your discretionary

income' after reviewing adjusted gross income, family size, and total loan balance." *Id*. ¶7 (quoting https://nelnet.studentaid.gov/content/idrplans, accessed April 30, 2024).

Plaintiff asserts she "enrolled in the SAVE plan," "owed approximately $35,000 in student loans," and "has a gross income of $5,833.32 per month." *Id*. ¶¶9-11. Therefore, she maintains that 10 percent of her unadjusted gross income would be $583.33. *Id*. ¶12. However, Nelnet mailed her a monthly statement in December 2023 that miscalculated her January 2024 payment as $1,969.44, which was above the highest repayment plan option even offered to borrowers. *Id*. ¶¶14, 15. Plaintiff asserts Nelnet reported this inflated monthly payment amount to the credit bureaus, which resulted in her being denied a mortgage loan in January 2024. *Id*. ¶20.

After Plaintiff discovered the error, she sent disputes to the credit bureaus, but the credit bureaus were informed by Nelnet that her payments were correctly calculated despite the fact it placed her in administrative forbearance while it recalculated her correct payment. *Id*. ¶¶26-32. Plaintiff contends she checked her online account on February 9, 2024, and it continued to show her amount due was $1,969.44. *Id*. ¶24. A second dispute was sent to Nelnet in or around February 2024, but Plaintiff alleges that Nelnet did not conduct a reasonable investigation, "failed to review all relevant information provided by the consumer reporting agency, and failed to modify information that was found to be inaccurate, incomplete, or could not be verified, when it continued to permit the reporting of the delinquencies and improper information on the account." *Id*. ¶¶33, 34. Plaintiff contends that Nelnet's communications with the credit reporting agencies "were false, deceptive, or misleading." *Id*. ¶37.

As a result of these actions, Plaintiff alleges in Count I on behalf of herself and the putative class that Nelnet violated West Virginia Code § 46A-2-127[1] and § 128[2] of the West Virginia Consumer Credit and Protection Act (WVCCPA).[3] Specifically, Plaintiff claims:

> The Defendant Nelnet has engaged in repeated violations of Article 2 of the West Virginia Consumer Credit and Protection Act, including, but not limited to,
>
> a. using unfair or unconscionable means to collect a debt from Plaintiff in violation of West Virginia Code §46A-1-128;
>
> b. utilizing fraudulent, deceptive, or misleading representations or means regarding Plaintiff's student loan status in an attempt to collect a debt or obtain information regarding Plaintiff in violation of West Virginia Code §46A-2-127[;]
>
> c. making false representations and/or implications of the character, extent, or amount of a claim against a consumer violating West Virginia Code §46A-2-127(d).

---

[1]Section 127 states, in part:

> No debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
>
> *       *       *
>
> (d) Any false representation or implication of the character, extent or amount of a claim against a consumer, or of its status in any legal proceeding[.]

W. Va. Code § 127, in part.

[2]Section 128 provides, in part: "No debt collector may use unfair or unconscionable means to collect or attempt to collect any claim." W. Va. Code § 128, in part.

[3]In her individual capacity, Plaintiff also asserts Nelnet violated the Fair Credit Reporting Act in Counts II, III, and IV.

*Id*. ¶65. With respect to her WVCCPA claim, Plaintiff expressly disavows any "credit reporting damages" and, instead, seeks actual, statutory, and punitive damages, and "general damages for the Defendant's negligence as alleged in in Count I of the Complaint." *First Am. Class Action Compl.* at 11-12 & ¶39.

In its motion, Nelnet argues Count I must be dismissed because Plaintiff has not alleged a concrete injury in fact sufficient to confer Article III standing. Specifically, Nelnet states that Plaintiff has not alleged she made excessive payments or expended any resources to get temporary relief, such as applying for a forbearance or deferment, from the alleged miscalculation. To the contrary, Plaintiff acknowledges that Nelnet placed her "in an administrative forbearance while it worked to recalculate [her] correct monthly payment." *Id*. ¶32. Absent a claim of some concrete injury as a result of a WVCCPA violation, Nelnet asserts Plaintiff lacks standing. In the alternative, Nelnet argues Plaintiff's WVCCPA claim fails to state a claim that satisfies the pleading standards under Rules 8 and 9(b) of the Federal Rules of Civil Procedure.

## II.
## STANDARD OF REVIEW

Nelnet challenges the sufficiency of Plaintiff's complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failing to state a claim under Rule 12(b)(6). "A motion to dismiss pursuant to Rule 12(b)(1) raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it. It is axiomatic that a court must have subject matter jurisdiction over a controversy before it can render any decision on the merits." *City of Huntington v. Lifehouse, Inc.*, Civ. Act. No. 3:22-0402, 2023 WL 4534618, at *2 (S.D. W. Va. July 13, 2023). Rule 12(b)(1) challenges may be raised as either a "facial attack" or a "factual attack." *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir.

1986) (Murnaghan, J., concurring), *rejected on other grounds*, *Sheridan v. United States*, 487 U.S. 392 (1988). A "facial attack" asks whether the pleadings, without additional evidence, are sufficient. *Id*. A "factual attack" questions the truthfulness of the complaint's factual allegations, and the court may consider evidence outside the pleadings to make its determination. *Id*. The burden of proving subject matter jurisdiction rests on the party invoking it, and dismissal "is proper only if there is no dispute regarding the material jurisdictional facts and the moving party is entitled to prevail as a matter of law." *Cornell v. W. Virginia Div. of Corr. & Rehab.*, Civ. Act. No. 2:24-00120, 2024 WL 4368991, at *3 (S.D. W. Va. Oct. 1, 2024) (citations omitted).

A challenge under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint and, to survive, it must contain enough factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]"). "Plausibility" requires more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Id.*

In this case, the Court finds that Plaintiff has failed to meet her burden of demonstrating Article III standing over Count I and, therefore, Count I must be dismissed.

## III.
## DISCUSSION

In *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), the United States Supreme Court discussed the requirements of Article III standing. The plaintiffs in *TransUnion* consisted of a class of 8,185 individuals who alleged TransUnion "failed to use reasonable procedures to ensure the accuracy of their credit files[.]" 594 U.S. at 417. Of those, 1,853 class members alleged that TransUnion caused them reputational harm by providing misleading information to third-party businesses. *Id*. The credit files of the remaining class members were not provided to any third parties, but all class members claimed TransUnion sent them mailings with formatting errors. *Id*. at 418.

In deciding whether the various class members have standing, the Supreme Court emphasized that "[f]or there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *Id*. at 423 (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997) (some quotation marks omitted)). To do so, the Supreme Court reiterated that "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id*. (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). A case or controversy does not exist if a plaintiff has not claimed an injury caused by the defendant that the court can remedy. *Id*. In other words, "under Article III, a federal court may resolve only 'a real controversy with real impact on real persons.'" *Id*. (quoting *American Legion v. American Humanist Ass'n*, 588 U.S. 29 (2019)).

As significant in both *TransUnion* and in this case, what constitutes a concrete harm is the critical question to be answered. Some harms, such as physical and monetary ones, easily may qualify as concrete harms. Likewise, some intangible harms, such as reputational, "disclosure of private information, and intrusion upon seclusion," also may qualify as concrete harms. *Id*. at 425 (citation omitted). However, at a fundamental level, whether a concrete harm adequately exists requires the court to "assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id*. at 424 (quoting *Spokeo v. Robins*, 578 U.S. 330, 341 (2016)). There need not be "an exact duplicate in American history or tradition," but the plaintiff must identify "a close historical or common-law analogue for their asserted injury." *Id*. (citing *Spokeo*). A concrete injury must be shown even when Congress has created a statutory right and an opportunity for a plaintiff to vindicate that right. *Id*. at 426. Simply put, "an injury in law is not an injury in fact and, if there is no concrete harm, there is no standing. *Id*. at 417, 427. Furthermore, it is the plaintiff's burden to demonstrate standing and, in a class action situation, every member of the class must establish standing to recover individual damages. *Id*. at 430-31 (citation omitted). Standing cannot be "dispensed in gross," rather it must be demonstrated on a claim-by-claim basis and "for each form of relief" sought. *Id*. at 431 (citations omitted).

Applying these principles to the facts before it, the Supreme Court first considered the 1,853 class members who alleged that TransUnion disseminated reports to third parties that contained alerts that their names potentially matched the names of individuals identified by the United States as threats to national security. *Id*. at 419, 432. The Supreme Court determined the plaintiffs' injuries bore a "close relationship" to the tort of defamation as the alerts labeled these

"class members as potential terrorists, drug traffickers, or serious criminals." *Id*. at 432. Thus, the Supreme Court easily found those class members "suffered a concrete harm that qualifies as an injury in fact." *Id*.

Turning next to the 6,332 class members who had alerts in their files, but whose files were not disseminated to third parties, the Supreme Court reached a different result. In that situation, the Supreme Court found "there is no historical or common-law analog where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury." *Id*. at 434 (internal quotation marks and citation omitted). Stated differently, "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm" and is insufficient to establish Article III standing. *Id*. Additionally, these class members' argument they were at risk of future harm if their information was disseminated did not establish a concrete injury. *Id*. at 437-38. Moreover, many of the 6,332 class members were unaware there were alerts even on their files. *Id*. at 438. Consequently, the Supreme Court determined these class members lacked standing.

As to the claims by all class members that TransUnion incorrectly formatted mailings, depriving them of a statutory right to have information formatted in a specific manner, the Supreme Court found the class members did not allege any harm as a result of the formatting violations. *Id*. at 440. With no evidence of harm, the Supreme Court held that these "bare procedural violations, divorced from any concrete harm," do not meet the requirements for Article III standing. *Id*. (internal quotation marks, bracket, and citation omitted).[4]

---

[4]TransUnion did not meaningfully challenge the named plaintiff's standing as to these

In support of standing, Plaintiff argues under *TransUnion* that her WVCCPA claim is a "close historical or common-law analogue" to a breach of contract. Plaintiff maintains that the Department of Education holds her loan and offered her a reduced monthly payment under the SAVE Act, she accepted that offer, and Nelnet, acting as the Department of Education's agent, breached that agreement by failing to properly calculate those payments. Plaintiff asserts this breach of contract gives her a right to sue and recover nominal damages even when there are not actual damages. *Pl.'s Resp. in Opp'n to Def.'s Partial Mot. to Dismiss Pl.'s First Am. Class Action Compl.*, at 9, ECF No. 28 (citing *Beatty Lumber Co. v. Western Union Telegraph Co.*, 44 S.E. 309, 312 (W. Va. 1903) ("It is well settled that the bare infringement of a right, or the bare breach of a contract, though not accompanied by actual damage, gives a right to recovery of nominal damages[.]")).

Plaintiff contends these nominal damages open the courthouse doors as the Supreme Court ruled in *Uzegbunam v. Preczewski*, 592 U.S. 279 (2021), that "a person who is awarded nominal damages receives 'relief on the merits of his claim' and 'may demand payment for nominal damages no less than he may demand payment for millions of dollars in compensatory damages.'" 592 U.S. at 291 (quoting *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)). Additionally, the Supreme Court stated that "[d]espite being small, nominal damages are certainly concrete." *Id*. at 290-91. In light of *Uzegbunam* and a common law rule that a party can sue for a breach of contract regardless of actual damages, Plaintiff insists that she has standing to pursue her WVCCPA claim post *TransUnion*. *Pl.'s Resp. in Opp'n to Def.'s Partial Mot. to Dismiss Pl.'s*

---

claims, and the Supreme Court found no reason to reverse the lower court's finding that he had standing in this regard. *Id*. at n. 8.

*First Am. Class Action Compl.*, at 11-14 (citing *Denning v. Bond Pharmacy*, 50 F.4th 445, 451 (5th 2022) (stating that "traditional and recent precedent arising from both the Fifth Circuit and the Supreme Court reflect that a breach of contract is a sufficient injury for standing purposes"); *Eletson Holdings, Inc. v. Levona Holdings Ltd*, Civ. Act. No. 23-7331, 2024 WL 1724592, *21 (S.D. N.Y. Apr. 19, 2024) (finding "[t]he right of a party to sue for breach of contract, regardless of harm done, has deep roots in the law"(citations omitted); *Attias v. Carefirst, Inc.*, 346 F.R.D. 1, 9 (D. D.C. 2024) (stating a "breach of a contractual obligation to perform some duty has always been understood as a concrete injury that enables the aggrieved contracting party to proceed in an American court").

Although Plaintiff spends much of her efforts arguing that standing for a breach of contract claim exists even when only nominal damages may be awarded, the first issue to resolve is whether her claims under the WVCCPA are a contractual analogue. If a claim under a consumer protection act should be treated as a contract or a tort action frequently arises in the context of choice of law questions and requires a case-by-case analysis. *See In re Bridgestone/Firestone, Inc. Tires Product Liability Litigation*, 155 F. Supp.2d 1069, 1078 n.6 (collecting cases and stating "[c]ourts consistently examine the specific claims made in a particular case to determine whether a claim under a consumer protection statute should be treated as a tort or a contract action for choice of law purposes" (citations omitted)). For instance, in *Kreger v. General Steel Corporation*, Civ. Act. No. 07-575, 2010 WL 2902773 (E.D. La. July 19, 2010), the district court found that, while the parties' dispute arose from a contractual relationship, the plaintiff's consumer protection claims of "misrepresentation of services" and "failure to properly investigate . . . are, at their core,

negligence based and sound in tort." 2010 WL 2902773, at *12 (citation omitted). The Court finds the same is true in this case.

Here, Plaintiff asserts she has a contractual right to have her payments calculated pursuant to the SAVE Act, but Nelnet miscalculated those payments. Although the method for calculating Plaintiff's payments arises from an alleged contractual relationship with the Department of Education, her claims that Nelnet, as the servicer of the loan, "us[ed] unfair or unconscionable means to collect a debt," "utilize[ed] fraudulent, deceptive, or misleading representations or means regarding Plaintiff's student loan status," and made "false representations and/or implications of the character, extent, or amount of a claim" in violation of the WVCCPA,[5] sound in tort, not contract. In fact, Plaintiff states in her demand that she is requesting an award of "general damages for the Defendant's *negligence* as alleged in Count 1 [the WVCCPA claim] of the Complaint." *Id*. at 11 (italics added). Although Plaintiff also seeks "actual damages," she disavows any "credit reporting damages with respect to her WVCCPA claim" and does not allege she made any excessive payments or expended any resources. Thus, the Court finds she has not sufficiently alleged a factual basis for actual damages and she has not met her burden of demonstrating that she has suffered a concrete injury as a result of a violation of the WVCCPA.[6]

---

[5]*First Am. Class Action Compl.* ¶65.

[6]Nelnet asserts Plaintiff's contractual argument is completely misplaced because it has no contract with her. If one exists, Nelnet states it is between the plaintiff and the Department of Education. This Court need not resolve whether Nelnet breached any contractual rights Plaintiff may have had. However, even if a breach occurred, Nelnet argues Plaintiff lacks standing for the same reasons stated in the Seventh Circuit's decision in *Dinerstein v. Google, LLC*, 73 F.4th 502 (7th Cir. 2023). In that case, the Seventh Circuit rejected the plaintiff's standing argument that courts historically have entertained breach of contract claims regardless of any harm beyond the breach itself. 73 F.4th at 518-19. The Seventh Circuit stated that, pursuant to *TransUnion*, "an injury in law is not an injury in fact." *Id*. at 518-19 (internal quotation marks and citation omitted).

This decision is akin to a number of cases cited by Defendant in which standing was challenged for violations under the Fair Debt Collection Practices Act (FDCPA). For instance, in *Bassett v. Credit Bureau Services, Inc.*, 60 F.4th 1132 (8th Cir. 2023), the Eighth Circuit Court of Appeals found the plaintiff lacked standing to pursue her claims under the FDCPA and the Nebraska Consumer Practices Act. Relying upon the analysis in *TransUnion* and *Spokeo*, the Eighth Circuit recognized that there must be an injury in fact to establish standing. 60 F.4th at 1136. While the plaintiff received a debt collection letter she claimed violated these statutes, she "never paid any part of the interest or principal" and, as a result, the Eighth Circuit determined she could not show she suffered a tangible harm. Therefore, she was required to "point to an injury that 'has a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit in American courts.'" *Id*. (quoting *TransUnion*, 594 U.S. at 424, quoting *Spokeo*, 578 U.S. at 341). The plaintiff attempted to analogize her claims to common-law fraudulent misrepresentation and conversion, but the Eighth Circuit rejected her theory and found what she really was trying to do was "to ensure a defendant's compliance with regulatory law (and, of course, to obtain some money via the statutory damages)." *Id*. at 1136-37 (internal quotation marks and citation omitted). Consistent with the holdings of other circuit courts, the Eighth Circuit held this is insufficient for Article III standing. *Id*. at 1137-38 (collecting cases).

Similarly, in *Shields v. Professional Bureau of Collections of Maryland, Inc*., 55 F.4th 823 (10th Cir. 2022), the Tenth Circuit Court of Appeals found that a plaintiff who was sent collection letters from an outside mailer over outstanding student loan debt did not have standing.

---

In other words, the plaintiff "cannot simply allege a bare breach of contract, 'divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.'" *Id*. at 519 (quoting *Spokeo*, 578 U.S. at 341).

The plaintiff alleged that the defendant misrepresented her student debt in violation of the FDCPA and "injured her in two ways: by disclosing her debt and sending misleading letters." 55 F.4th at 828. However, the Tenth Circuit found the plaintiff failed to adequately allege a concrete injury. First, the Tenth Circuit stated that the disclosure of her debt to an outside mailer was not a concrete injury as the information was given to one private entity, not the public at large. *Id*. at 829. Second, the Tenth Circuit found that the content of the letter, which the plaintiff claimed did not truthfully inform her about her debt, was not a concrete injury because she did not allege in her complaint that the letters caused her to do anything. *Id*. at 830. The Tenth Circuit held the plaintiff's "confusion and misunderstanding are insufficient to confer standing." *Id*. at 830 (citation omitted). *See also Graves v. Foulger-Pratt Cos.*, Civ. Act. No. 1:21-01367 (MSN/WEF), 2023 WL 2720795, *8 (E.D. Va. Mar. 30, 2023) (stating "[a]lthough some courts have previously recognized that a plaintiff has standing under the FDCPA based solely on an alleged violation of the FDCPA, that conclusion no longer appears viable under *TransUnion*, which requires plaintiffs alleging statutory violations to also have suffered concrete injuries in order to have Article III standing" (citation omitted)). Having found in this case that Plaintiff has not alleged factual support in Claim I that she "suffered an injury in fact that is concrete, particularized, and actual or imminent" and her claim is not a "close historical or common-law analogue" to a breach of contract,[7] the Court finds she has not met her burden of establishing Article III standing, and the Court must dismiss the claim.[8]

---

[7] *TransUnion*, 594 U.S. at 423, 424.

[8] Given this decision, the Court finds it unnecessary to address Nelnet's argument that Count I also must be dismissed because it does not meet the pleading standards under Rule 9(b) of the Federal Rules of Civil Procedure.

## IV.
## CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** Defendant Nelnet Servicing, LLC's Motion for Partial Dismissal of Plaintiff Amanda Stevens' First Amended Class Action Complaint (ECF No. 24) and **DISMISSES** Count I from the Complaint **WITHOUT PREJUDICE**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

        ENTER:    May 7, 2025

        _____
        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE